UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

| | |
|---|---|
| JOSE GOMEZ, | : Case No. |
| | : |
| Plaintiff, | : **COMPLAINT** |
| | : |
| | : **DEMAND FOR JURY TRIAL** |
| v. | : |
| | : **1. VIOLATIONS OF SECTION 14(a)** |
| OHR PHARMACEUTICAL, INC., | :     **OF THE SECURITIES** |
| MICHAEL FERGUSON, JASON SLAKTER, | :     **EXCHANGE ACT OF 1934 AND** |
| JUNE S. ALMENOFF, ORIN HIRSCHMAN, | :     **RULE 14a-9** |
| and THOMAS M. RIEDHAMMER, | : |
| | : **2. VIOLATIONS OF SECTION 20(a)** |
| Defendants. | :     **OF THE SECURITIES** |
| | :     **EXCHANGE ACT OF 1934** |

------------------------------------------------------------------

Plaintiff Jose Gomez ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

## NATURE OF THE ACTION

1.      This action is brought by Plaintiff against Ohr Pharmaceutical, Inc. ("Ohr" or the

"Company") and the members of Ohr's board of directors (the "Board" or the "Individual

Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934

(the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in

connection with the proposed merger (the "Proposed Merger") between Ohr and NeuBase

Therapeutics, Inc. ("NeuBase"). After completion of the merger, Ohr will be renamed "NeuBase

Therapeutics, Inc." and expects to trade on Nasdaq under the symbol "NBSE."

2.      On January 2, 2019, the Board caused the Company to enter into an agreement and

plan of merger (the "Merger Agreement") with the NeuBase, pursuant to which each share of

NeuBase common stock will be converted into the right to receive approximately 1.019055643 shares of common stock of Ohr  subject to adjustment to account for a reverse stock split of Ohr common stock to be implemented prior to the consummation of the merger. The initial exchange ratio in the Merger Agreement was based on Ohr having minimum cash of $1.0 million at the closing of the merger and NeuBase receiving minimum proceeds of $4.0 million in the NeuBase Financings, and if such amounts were achieved, the current stockholders, option holders, warrant holders and note holders of NeuBase were expected to own, or hold rights to acquire, the Original NeuBase Allocation Percentage (80%) of the Fully-Diluted Common Stock of Ohr, and Ohr's current stockholders, option holders and warrant holders were expected to own, or hold rights to acquire, the Original Ohr Allocation Percentage (20%) of the Fully-Diluted Common Stock of Ohr. The Merger Agreement provides that the Original NeuBase Allocation Percentage will be increased by 0.1% for every $100,000 that the proceeds from the NeuBase Financings exceed $4.0 million, and the Original Ohr Allocation Percentage will be decreased by 0.1% for every $100,000 that the proceeds from the NeuBase Financings exceed $4.0 million. As a result of the NeuBase Financings resulting in proceeds of $9.0 million, it is expected that immediately after the merger, and after giving effect to the NeuBase Financings, current stockholders, option holders, warrant holders, and note holders of NeuBase will own, or hold rights to acquire, approximately 85% of the Fully-Diluted Common Stock of Ohr, and Ohr's current stockholders, option holders and warrant holders will own, or hold rights to acquire, approximately 15% of the Fully-Diluted Common Stock of Ohr (the "Merger Consideration").

3.      On March 8, 2019, the Board authorized the filing of a materially incomplete and misleading preliminary joint proxy statement/prospectus (the "Proxy") with the Securities and

Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act, that recommends Ohr shareholders vote in favor of the Proposed Merger.

4.      While Defendants are touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, they have failed to disclose material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby rendering certain statements in the Proxy incomplete and misleading. Specifically, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections of both companies; (ii) the valuation analyses performed by the Company's financial advisor, Roth Capital Partners LLC ("Roth"), in support of its fairness opinion; and (iii) the background of the Proposed Merger.

5.      It is imperative that the material information omitted from the Proxy is disclosed to the Company's shareholders prior to the forthcoming shareholder vote, so that they can properly exercise their corporate suffrage rights.

6.      For these reasons as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger until the material information discussed below is disclosed to Ohr shareholders, or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331, federal question jurisdiction, as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.     Venue is proper in this Court under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District.  Indeed, Ohr is headquartered in this District and Ohr's common stock trades on the Nasdaq stock exchange, which is headquartered in this District, rendering venue in this District appropriate.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10.     Plaintiff is, and has been at all relevant times, the owner of Ohr common stock and held such stock since prior to the wrongs complained of herein.

11.     Defendant Ohr is a Delaware corporation with its principal executive offices located at 800 Third Avenue, 11th Floor, New York, NY 10022.  Ohr is a pharmaceutical company focused on the development of novel therapeutics and delivery technologies for the treatment of ocular disease. Ohr's common stock trades on the Nasdaq under the symbol "OHRP."

12.     Individual Defendant Michael Ferguson is a director of Ohr and the Chairman of the Board.

13.     Individual Defendant Jason Slakter is a director of Ohr and the Chief Executive Officer of the Company.

14.     Individual Defendant June S. Almenoff is, and has been at all relevant times, Lead Director of Ohr.

15.     Individual Defendant Orin Hirschman is, and has been at all relevant times, a director of Ohr.

16.     Individual Defendant Thomas M. Riedhammer is, and has been at all relevant times, a director of Ohr.

17.     The parties identified in ¶¶ 11-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### I.     Background and the Proposed Merger

18.     Ohr, incorporated on May 8, 2014, is a pharmaceutical company focused on the development of therapeutics and delivery technologies for the treatment of ocular disease. The Company's product pipeline includes Squalamine Lactate Ophthalmic Solution 0.2% (Squalamine, also known as OHR-102), SKS Sustained Release Ocular Drug Delivery Platform Technology, Animal Model for Dry-Age-Related Macular Degeneration, and Non-Ophthalmology Assets.

19.     NeuBase is a private biotechnology company focused on developing gene silencing therapies to treat rare genetic diseases caused by mutant proteins. NeuBase discovers and develops ribonucleic acid-targeted drugs called peptide nucleic acids. Its proprietary gamma Peptide-nucleic

acid AnTisense OLigonucleotide ("PATrOL™") platform is aimed at treating a multitude of people affected by rare genetic diseases, with an initial focus on neurological disorders.

20.     On January 3, 2019, Ohr and NeuBase issued a joint press release to announce the Proposed Merger stating, in relevant part, as follows:

### Ohr Pharmaceutical, Inc. Announces Merger Agreement with NeuBase Therapeutics, Inc.

*Proposed combined company's peptide-nucleic acid antisense oligonucleotide (PATrOL™) technology platform enables rapid development of therapies delivered systemically for genetic diseases*

*Initial indications include RNA gene silencing for Huntington's disease and myotonic dystrophy, with additional future applications in other RNA silencing indications*

*Ohr Pharmaceutical Reports Fiscal Year 2018 Financial Results*

*Conference call and webcast to be held today, Jan. 3, at 8:30 a.m. EST*

**NEW YORK, January 3, 2019** -- Ohr Pharmaceutical, Inc. ("Ohr") (Nasdaq: OHRP) announced today that it has entered into a definitive merger agreement with NeuBase Therapeutics, Inc. ("NeuBase"), under which the stockholders of NeuBase would become the majority holders of the combined company. The proposed merger will create a public company focused on advancing NeuBase's peptide-nucleic acid (PNA) antisense oligonucleotide (PATrOL™) technology platform for the development of therapies to address severe and currently untreatable diseases caused by genetic mutations.

Upon closing of the transaction, the combined company will change its name to "NeuBase Therapeutics, Inc." and propose its trading symbol on the NASDAQ be changed to "NBSE". The executive team of NeuBase will serve as the executive team of the combined company, led by Dietrich A. Stephan, Ph.D. as Chief Executive Officer.

"We are excited to enter into a definitive merger agreement with NeuBase, a company with a powerful technology and pipeline that has the potential to address multiple unmet medical needs across a range of serious genetic diseases," said Jason Slakter, M.D., Chief Executive Officer of Ohr Pharmaceutical. "Following a comprehensive review of strategic alternatives, Ohr's Board of Directors concluded that the proposed transaction with NeuBase is in the best interest of our stockholders. The proposed merger will provide an opportunity to create value as an innovative, science-driven company with a proprietary technology platform

utilizing advanced gene silencing techniques. We intend to hold a special meeting of Ohr shareholders in the first half of 2019 to vote on this merger."

"The proposed merger with Ohr signals the next stage of growth for NeuBase," added Dr. Dietrich Stephan, Chief Executive Officer of NeuBase Therapeutics. "The company's new therapeutic modality has the potential to address a wide range of germline and somatic diseases caused by inappropriate expression and change-of-function mutations of genes. Our technology has significant potential advantages over currently available antisense and small molecule approaches to gene silencing, including high selectivity for targets, cell membrane and blood brain barrier permeability, early data indicating no immune response and a low cost of goods. These characteristics are essential for scalability in addressing a wide range of genetic diseases, including cancer. We are initially developing this exciting platform for RNA gene silencing in Huntington's disease and myotonic dystrophy, with additional future, high value RNA silencing indications."

NeuBase's modular PATrOL™ technology platform is being developed to treat a multitude of rare genetic diseases. The systemically-deliverable PATrOL™ therapies have the potential to improve upon current gene silencing treatments by combining the advantages of synthetic small molecule approaches with the precision of antisense technologies. NeuBase's development is currently focused on severe neurological disorders such as Huntington's disease and myotonic dystrophy, where blood-brain barrier penetration and broad tissue distribution are critical. In some cases, such as Huntington's disease, systemic administration may ameliorate both CNS and non-CNS pathology, a benefit that current intrathecally administered therapies cannot achieve.

**About the transaction**

On a pro forma basis and based upon the number of shares of Ohr common stock to be issued in the merger, current Ohr stockholders will own approximately 20% of the combined company and NeuBase stockholders will own approximately 80% of the combined company, after accounting for the additional NeuBase financing transaction. The actual allocation will be subject to adjustment based on Ohr's and NeuBase's cash balance at the time of closing and the amount of the additional financing consummated by NeuBase at or before the closing of the merger. Certain members and affiliates of the board of directors and management of Ohr and Neubase have indicated an intent to invest in the additional NeuBase financing transaction.

The proposed transaction has been approved by the board of directors of both companies. The merger is subject to the approval of Ohr shareholders at a special meeting of shareholders, which is expected to occur in the first half of 2019, along with the satisfaction or waiver of other customary conditions.

This communication does not constitute an offer to sell, or the solicitation of an offer to buy, any securities.

Roth Capital Partners, LLC is acting as financial advisor to Ohr for the transaction and Troutman Sanders LLP is serving as legal counsel to Ohr. Allele Capital Partners, LLC at Tribal Capital Markets, LLC is acting as financial advisor and Paul Hastings LLP is serving as legal counsel to NeuBase.

21.    The Merger Consideration represents excessive compensation for NeuBase thereby undervaluing Ohr's share of the combined company. It is therefore imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and cast an informed vote on the Proposed Merger.

## II.    The Proxy Is Materially Incomplete and Misleading

22.    On March 8, 2019, Ohr filed the Proxy with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to cast an informed vote on Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

23.    First, the Proxy entirely omits any of the financial projections for Ohr, NeuBase, or the synergies of the combined company (the "Omitted Projections"). In connection with rendering its fairness opinion Roth reviewed "financial forecasts, relating to the business, earnings, cash flow, assets, liabilities and prospects of Ohr and NeuBase that were furnished to Roth by management of Ohr and NeuBase, respectively." Proxy at 150. Roth then "conducted discussions with members of senior management and representatives of Ohr and NeuBase concerning" these

financial forecasts. *Id*. Furthermore, Roth utilized the Omitted Projections in their valuation analyses to support their fairness opinion. Indeed, the Omitted Projections served as the foundation for their *Discounted Cash Flow Analysis*. The failure to disclose the Omitted Projections renders the summary of this analysis misleading.

24.    Moreover, on pages 142-149 of the Proxy, the board of directors for each Ohr and NeuBase list their "material" reasons for supporting the merger and the factors they considered in reaching its determination. Among the Ohr Board's reasons and factors are the following:

- The Ohr special committee and the Ohr board of directors also reviewed with the management of Ohr the current plans of NeuBase for developing its product candidates to confirm the likelihood that the combined company would possess sufficient financial resources. The Ohr special committee and the Ohr board of directors also considered the possibility that the combined company would be able to take advantage of the potential benefits resulting from the combination of Ohr and NeuBase to raise additional funds in the future.
- The Ohr special committee and the Ohr board of directors considered the opportunity as a result of the merger for Ohr's stockholders to participate in the potential value that may result from development of the NeuBase PATrOL™ platform and product candidate portfolio and the potential increase in value of the combined company following the merger
- The Ohr special committee and the Ohr board of directors concluded that the merger would provide the existing Ohr stockholders with a significant opportunity to participate in the potential increase in value of the combined company following the merger.

Proxy at 143. Among the NeuBase board's reasons and factors are the following:

- the cash resources of the combined company, expected to be available at the closing of the merger relative to the anticipated burn rate of the combined company;

Proxy at 147. Both boards relied heavily on the information contained within the Omitted Projections to come to a decision on the Proposed Merger for themselves and for recommending it to shareholders. Accordingly, the failure to disclose the Omitted Projections renders the above statements of "material" reasons and factors misleadingly incomplete.

25.     Thus, the Omitted Projections served as the primary reason for the Board to approve the Proposed Merger and for Roth to find the Merger Consideration "fair" to Ohr shareholders. The Omitted Projections are plainly material and speak squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Merger: is a smaller stake in the combined company more or less valuable than a full stake in the standalone company? Without the Omitted Projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Merger.

26.     Given that NeuBase is a private company, there is no public financial information for the company or public valuation that Ohr shareholders could rely upon. And since NeuBase will control approximately 85% of the post-merger Company, perhaps nothing is more relevant for Ohr shareholders to cast an informed vote than the financial projections of NeuBase. Moreover, Roth did not perform a valuation of Ohr as a standalone entity, and four of the five valuation analyses performed for NeuBase made no connection to NeuBase as an entity but merely valued companies (or transactions) with "inherent limitations on the applicability of such companies [or transactions] to the valuation analysis of NeuBase." Proxy at 154, 155, 156, 157. Therefore, the Omitted Projections are plainly material information and their omission renders the statements made by the boards of directors and the summaries of Roth's financial analyses misleading.

27.     Second, in summarizing the *Discounted Cash Flow Analysis* prepared by Roth, the Proxy fails to disclose the following key information—in addition to the Omitted Projections—used in their analysis: (i) the probability of success adjustments applied to the free cash flows; (ii) the inputs and assumptions underlying selection of the 1.0x to 2.0x terminal multiples used to derive the terminal values; and (iii) the actual terminal values calculated.

28.     These key inputs are material to Ohr shareholders, and their omission renders the summary of the *Discounted Cash Flow Analysis* incomplete and misleading. As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."   Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" Id.  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

Id. at 1577-78.

29.     Without the above-omitted information and, particularly, the omitted unlevered free cash flow projections, Ohr shareholders are misled as to the reasonableness or reliability of Roth's analysis and unable to properly assess the fairness of the Proposed Merger.  As such, these material omissions render the summary of the *Discounted Cash Flow Analysis* included in the Proxy misleading.

30.     Additionally, Roth performed a number of analyses—*Initial Public Offering Comparable Analysis, Publicly Traded Comparable Company Analysis,* and *Precedent Early*

*Stage Merger and Acquisition Transactions* Analyses—analyzing similar companies and transactions to approximate a value for NeuBase. However, in summarizing these analyses, the Proxy fails to include the target value calculated for each company and transaction utilized in the analyses. A fair summary of a companies or transactions analysis requires the disclosure of the individual metrics for each company and transaction; merely providing means or medians that a banker calculated is insufficient, as shareholders are unable to assess whether the banker applied appropriate metrics, or, instead, applied unreasonably low metrics in order to present the valuations in the most favorable light—i.e. as high as possible. Accordingly, the omission of this material information renders the summaries of these analyses misleading.

31.     Moreover, in summarizing the valuation analyses Roth performed, the Proxy states that "Roth did not perform a valuation of the enterprise value of Ohr using traditional valuation analyses such as the discounted cash flow analysis and trading comparables for Ohr as a stand-alone entity." Proxy at 153. However, the Proxy is silent as to why Roth—Ohr's financial advisor—failed to perform any valuation analysis on Ohr. Accordingly, this statement is misleading, and must be explained.

32.     Third, with respect to the *Background of the Merger*, the Proxy states that Ohr and multiple parties entered into confidentiality agreements, but fails to disclose whether such agreements contained a standstill provision and/or a "don't ask don't waive" ("DADW") provision, including whether those provisions had fallen away upon the execution of the Merger Agreement or were still in effect. On page 22 of the Proxy states that in order for Ohr to engage with any new party, such party must enter into a confidentiality agreement with terms no more favorable than that of NeuBase including a "customary 'standstill' provision." This indicates that standstill agreements were a regular part of the confidentiality agreements Ohr executed.

33.     Accordingly, the express communication of the existence of such provisions is material to Ohr shareholders, as it bears directly on the ability of parties that expressed interest in acquiring the Company to offer them a better deal.  The failure to plainly disclose the existence of DADW provisions creates the false impression that any of the parties who signed confidentiality agreements could have made a superior proposal. If those confidentiality agreements contained DADW provisions, then those parties could only make a superior proposal by breaching the agreement—since in order to make the superior proposal, they would have to ask for a waiver, either directly or indirectly. Thus, the omission of this material information renders the descriptions of the confidentiality agreements the Company entered into in the *Background of the Merger* section of the Proxy misleading.  Any reasonable shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

34.     In sum, the omission the of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff and other Ohr shareholders will be unable to cast an informed vote in connection with the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a

national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

37.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

38.    The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

39.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger.   Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding: (i) the financial projections for both companies; (ii) the valuation analyses performed by Roth; and (iii) the background of the Proposed Merger.

40.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from

the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

41.     Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most, if not all, of the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger. Indeed, the Proxy states that Defendants were privy to and had knowledge of the financial projections and the details surrounding discussions with other interested parties and Roth. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to review Roth's analyses in connection with their receipt of the fairness opinions, question the bankers as to their derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

42.     Each of the Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it—which they were required to do carefully.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement, the preparation and review of strategic alternatives, and the review of financial projections.

43.     Ohr is also deemed negligent as a result of the Individual Defendants negligence in preparing and reviewing the Proxy.

44.     The misrepresentations and omissions in the Proxy are material to Plaintiff and other Ohr shareholders, and will deprive them of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Ohr within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Ohr, and participation in and/or awareness of the Ohr's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Ohr, including the content and dissemination of the statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Ohr, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The omitted information identified above was reviewed by the Board prior to voting on the Proposed Merger.   The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Merger.   The Individual Defendants were thus directly involved in the making of the Proxy.

49.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.   The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.   By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.   As a direct and proximate result of the Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily enjoining Defendants and their counsel, agents, employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Merger until Defendants disclose the material information identified above that has been omitted from the Proxy;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: March 18, 2019

Respectfully submitted,

*/s/ Juan E. Monteverde*
    Juan E. Monteverde

**MONTEVERDE & ASSOCIATES PC**
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel.: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Counsel for Plaintiff*